IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NATHAN LEE COOK,            )
    Petitioner,            )    Civil Action No. 12-179 Erie
                            )
v.                          )
                            )    Magistrate Judge Susan Paradise Baxter
WARDEN BOBBY L. MEEKS,      )
    Respondent.            )

# OPINION AND ORDER[1]

Presently before the Court is a petition for a writ of habeas corpus filed by federal prisoner Nathan Lee Cook pursuant to 28 U.S.C. § 2241. [ECF No. 4]. He contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329 (1992), erred in computing his sentence. For the reasons set forth below, the petition is denied.

## I.

**A.**    **Relevant Background**

Petitioner has a lengthy criminal history. In 2004, he was serving a state sentence imposed upon him by the state court in Anderson County, Texas, for the offenses of Burglary of a Habitation and Possession of a Controlled Substance. On September 8, 2004, he was on parole. On that date, a Deputy Sheriff in Anderson County pulled over the car he was driving during a routine traffic stop. A search of the vehicle revealed a fully-loaded handgun, drug paraphernalia, digital scales, 131.90 grams of methamphetamine, and a large sum of U.S. currency. The Deputy Sheriff arrested him and new state criminal charges were filed against him. In addition, on September 16, 2004, the Texas Department of

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

1

Criminal Justice, Clemency and Parole, issued a parole violation warrant (which is commonly referred to as a "blue warrant") and he was placed in a jail unit on that date. He received credit against his state parole violator term beginning on that date.[2] [Resp's Doc. 2, Declaration of Helen Ramsdell, ¶¶ 5, 6(y), ECF No. 10-3 at 3-4, 8; Resp's Doc. 2n at 2].

The criminal conduct associated with Petitioner's September 8, 2004, arrest also is the basis for the federal conviction and sentence at issue in this case. On February 1, 2005, he was indicted in the U.S. District Court for the Eastern District of Texas with: Count 1 – Possession with Intent to Distribute Methamphetamine; Count 2 – Possession of a Firearm During Drug Trafficking; Count 3 – Felon in Possession of a Firearm; and, Count 4 – Felon in Possession of Ammunition. See ECF No. 1 in United States v. Cook, No. 6:05-cr-06-LED-JKG-1 (E.D. Tx.) (available on PACER).

Because Texas authorities had arrested Petitioner first, he was in the "primary custody" (sometimes referred to as "primary jurisdiction") of the State of Texas. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012) (per curiam); Elwell v. Fisher, 716 F.3d 477 (8th Cir. 2013). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672

---

[2] The Court of Criminal Appeals of Texas has held that for the purposes of the statute governing credit on a parole revocation sentence, an arrest occurs on a parole revocation warrant on the date when the warrant has made the defendant ineligible for bail on the new offense, not on the date when the warrant is executed. Ex parte White, 400 S.W.3d 92 (Tex.Crim.App. 2013).

F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole. George, 463 F.App'x at 138 n.4.

When it came time for Petitioner to be prosecuted for his federal charges, he was at the Limestone County jail in Groesbeck, Texas. In April 2005, a U.S. Magistrate Judge issued a writ of habeas corpus *ad prosequendum* so that Petitioner could appear in federal court to answer the federal charges. The U.S. Marshals Service ("USMS") took temporary custody of him pursuant to that writ and federal authorities arrested him on April 15, 2005. See ECF Nos. 5, 13 in United States v. Cook, No. 6:05-cr-06-LED-JKG-1 (E.D. Tx.).

Although Petitioner was now in the physical custody of federal authorities pursuant to the writ of habeas corpus *ad prosequendum*, the State of Texas maintained primary custody over him. That is because a prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the sending sovereign unless and until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) app. note 3(E) (2003). See also Elwell, 716 F.3d at 482 ("When the United States obtained physical custody of Elwell based upon the writ of habeas corpus *ad prosequendum*, the transfer of physical control over Elwell's custody from Iowa to the United States did not terminate Iowa's primary jurisdiction."). The receiving sovereign – in this case, the federal government – is considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and/or sentencing him. Id.

Petitioner subsequently entered a guilty plea to Counts 1 and 2 of the federal indictment and the remaining Counts were dismissed. In October of 2005, the District Court sentenced him to a total

aggregate sentence of 138 months. The District Court was silent as to the relationship of Petitioner's federal sentence with any other state sentence to which Petitioner was or would be subject. See 10/11/05 Judgment in a Criminal Case, ECF No. 23 in United States v. Cook, No. 6:05-cr-06-LED-JKG-1 (E.D. Tx.).

On October 21, 2005, the Anderson County Prosecutor's Office dismissed the state criminal charges pending against Petitioner for the conduct connected with the September 8, 2004, since he had been convicted and sentenced in federal court for crimes related to the same incident. The state parole violator warrant was not affected. [Resp's Doc. 2, Ramsdell Dec., ¶ 5, ECF No. 10-3 at 3-4]. Therefore, Petitioner should have been returned to the physical custody of the State of Texas. However, the USMS mistakenly requested that the BOP designate Petitioner to a federal institution for service of his federal sentence. [Resp's Doc. 2, Ramsdell Dec., ¶ 6(l), ECF No. 10-3 at 6].

On November 17, 2005, Petitioner arrived at the Federal Correctional Institutional ("FCI") Texarkana to serve his federal sentence. The BOP quickly realized that the USMS had erred and that Petitioner should have been returned to the physical custody of the State of Texas to serve his state parole violator term in a state institution before he served his federal sentence. The BOP immediately placed Petitioner on an admission change so that he could be returned to state authorities, and on November 21, 2005, his status was changed to "holdover" due to the fact that he was awaiting transportation to state authorities. On December 20, 2005, Petitioner was returned to state authorities in satisfaction of the writ of habeas corpus *ad prosequendum*. The USMS lodged a federal detainer with the Texas Department of Criminal Justice. [Resp's Doc. 2, Ramsdell Dec., ¶ 6(m)-(r), ECF No. 10-3 at 6-7].

Almost four years later, on December 11, 2009, the State of Texas paroled Petitioner from his state parole violator term to the federal detainer. The State of Texas credited against Petitioner's state

parole violator sentence all of the time that he served in either state or federal custody from September 16, 2004, through December 11, 2009. Pursuant to 18 U.S.C. § 3584(a), the BOP has calculated Petitioner's federal sentence as consecutive to his state parole violator sentence. [Resp's Doc. 2, Ramsdell Dec., ¶ 11, ECF No. 10-3 at 10]. Pursuant to 18 U.S.C. § 3585(a), the BOP has calculated Petitioner's federal sentence to have commenced on the day the State of Texas released him on parole (December 11, 2009). The BOP also has determined that Petitioner is entitled to a total of 13 days of pre-commencement credit. Specifically, the BOP has decided that he is entitled to eight days of credit pursuant to 18 U.S.C. § 3585(b) for the time he spent in official detention from September 8, 2004, through September 15, 2004, because the State of Texas did not credit that time against his state parole violator sentence. As an equitable measure, the BOP also has granted Petitioner sentencing credit for the five days he served at FCI Texarkana from November 17, 2005, through November 21, 2005, due to the fact that he was temporarily erroneously designated to that federal institution. Assuming that Petitioner receives all good conduct time available to him, his projected release date is January 9, 2020. [Resp's Doc. 2, Ramsdell Dec., ¶ 6(y), ¶ 13, ECF No. 10-3 at 8, 11].

When Petitioner learned how the BOP was calculating his federal sentence, he sent a letter to the federal sentencing court (the District Court for the Eastern District of Texas), in which he asserted that he should have received additional credit against his federal sentence for time served. [Resp's Doc. 2j, ECF No. 10-3 at 65-68]. Of course, the BOP, and not the federal sentencing court, calculates Petitioner's federal sentence. However, the District Court could have ordered that his federal sentence be served concurrent with his state sentence, or at the very least advised the BOP that it did not object to Petitioner's federal sentence being calculated as concurrent with his state sentence. [See PS 5160.05, Pages 5-6]. It did not do so. Instead, the District Court issued an Order in which it explained:

5

Defendant was brought into federal custody pursuant to a Writ of Habeas Corpus Ad Prosequendum from Anderson County, Texas on April 15, 2005, where he was being held on a parole violation warrant. On October 3, 2005, Defendant pled guilty to the offenses of Possession With Intent to Distribute Methamphetamine and Possession of a Firearm During and in Relation to a Drug Trafficking Crime and was sentenced by U.S. District Judge William M. Steger to a sentence of 138 months in the Federal Bureau of Prisons. Defendant's judgment was silent as to whether the sentence imposed should run concurrently or consecutively with any future state sentence he may receive.

Defendant was in the primary custody of the State of Texas throughout, and he was relinquished to the State of Texas by the U.S. Marshal's Service on November 23, 2005. Defendant remained in State custody for the duration of his State sentence and was transferred to the Federal Bureau of Prisons around December 11, 2009.

Defendant contends that there is a paperwork "discrepancy," and argues that his federal sentence should have commenced October 3, 2005 [the date he was sentenced in federal court]. In other words, Defendant appears to assert that his federal sentence should have run concurrently with his State sentence from 2005 to 2009. Defendant also appears to argue that, at a minimum, he should be credited time against his federal sentence while he was in federal custody awaiting sentencing. Ultimately, Defendant contends that he believes his current release date is December 4, 2019, and that it should be revised to November 10, 2015.

Defendant was being held on a parole violation warrant in Anderson County, Texas, when he was brought into federal custody. Therefore, he had an undischarged term of imprisonment from a previous State sentence, and his situation implicates U.S.S.G. § 5G1.3, entitled "Imposition of a Sentence on Defendant Subject to an Undischarged Term of Imprisonment." That provision allows sentences for the current offense to be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment given the specific circumstances of the case. U.S.S.G. § 5G1.3(c). Specifically, Defendant's situation implicated § 5G1.3(c) which applies in cases where a defendant was on federal or state probation, parole, or supervised release at the time of the current offense and has such probation, parole, or supervised release revoked. *See* U.S.S.G. § 5G1.3, APPLICATION NOTE 3(C).

In turn, when a defendant has his or her parole revoked for a previous offense, U.S.S.G.§ 5G1.3, APPLICATION NOTE 3(C) cites Application Note 4 and U.S.S.G. § 7B1.3(f) and the Commission recommends that the sentence for the current offense be imposed consecutive to the sentence imposed for the revocation of parole. In other words, Defendant's Federal sentence of 138 months, according to the Sentencing Guidelines, was to run consecutive to the State sentence imposed for his parole violation. Therefore, Defendant is not entitled to credit against his Federal sentence for his time spent in the custody of the State of Texas from 2005 to 2009 for his State sentence.

6

> Regarding the time Defendant was in federal custody awaiting sentencing; federal inmates are given credit toward service of their sentences for any tine spent in official detention prior to the date their sentence commences. However, for the time spent in custody to be credited, the time in detention must have been served as a result of the offense for which the sentence was imposed, or as a result of any offense (State or Federal) for which the defendant was arrested after committing the offense for which the sentence was imposed. *See* 18 U.S.C. § 3585(b). Importantly, the time in federal custody must not have been credited against any other sentence. In this case, Defendant was receiving credit toward a State sentence during the time he was in federal detention; therefore, he cannot receive credit for that time toward his federal sentence.

[Resp's Doc. 2k, ECF No. 10-3 at 71-73].

Petitioner also filed a challenge through the BOP's administrative remedy process. He argued that the manner in which the BOP was calculating his sentence made him serve his sentence "in installments" and, therefore, violated the "continuous service rule," which is discussed below. The BOP denied Petitioner's request for additional credit and informed him that his sentence and release date has been calculated correctly as directed by the relevant federal statutes and BOP policies. [Resp's Doc. 1b, ECF No. 10-2 at 8-19].

Having had no success before either his federal sentencing court or the BOP, Petitioner, who is incarcerated within the territorial boundaries of the Western District Court of Pennsylvania, filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [ECF No. 4]. He contends that he is entitled to additional credit against his federal sentence. Respondent has filed an Answer in which he counters that the BOP has properly calculated Petitioner's federal sentence and that the petition should be denied. [ECF No. 10].

**B.**     **Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). 28 U.S.C. § 2241 "confers habeas jurisdiction

to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010), such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated. Thus, this Court has jurisdiction under § 2241 to consider Petitioner's claim that the BOP has erred in computing his sentence.

**C.     Discussion**

The following statutes are relevant to the evaluation of the petition: 18 U.S.C. § 3584(a), which governs a federal sentencing court's authority to order that a federal sentence be served concurrently with a state sentence; 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and, 18 U.S.C. § 3585(b), which governs the amount of credit that an inmate may receive for time served in official detention prior to the date his federal sentence commences. The BOP policies at issue in this case are not published in any federal regulation, and thus are not subject to public notice and comment before adoption. Although they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984), they are entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 207-08 (3d Cir. 2011) (per curiam) (citing Reno, 515 U.S. at 61), cert. denied, 132 S.Ct. 1068 (2012).

> **1.    The determination of whether a federal sentence is concurrent with or consecutive to a state sentence**

In determining whether Petitioner is entitled to any habeas relief, this Court must first examine whether there is any basis to disturb the BOP's computation of his federal sentence as being consecutive

8

to his state parole violator sentence pursuant to 18 U.S.C. § 3584(a). That statute provides, in relevant part:

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.… **Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently**.

(Emphasis added).

In applying § 3584(a), the BOP presumes that federal and state sentences are to be served consecutively unless the federal sentencing court orders that the sentences are to be served concurrently.[3] See PS 5880.28, Chapt. 1, Pages 31-33; PS 5160.05, Pages 2-7. In this case, Petitioner's federal sentencing court did not order that his federal sentence was to be served concurrently with any state sentence. In addition, in response to Petitioner's motion for additional credit, the federal sentencing court expressly stated that since Petitioner was subject to a state parole revocation sentence, his federal sentence should run consecutive to the state sentence. [Resp's Doc. 2k, ECF No. 10-3 at 71-73]. Thus, the BOP has determined that Petitioner's federal sentence is consecutive to his state sentence. There is no basis for this Court to disturb that determination. Given the express language of the statute, the BOP's policies regarding how to determine whether a federal sentence is concurrent with or consecutive to another sentence are certainly a permissible construction of § 3584(a).

### 2. Calculation of the date upon which a federal sentence commences

18 U.S.C. § 3585(a) governs the date a federal sentence commences. It provides:

---

[3] The BOP recognizes that a federal sentencing court "may, from time to time, order concurrent service of the federal sentence at some time after its imposition. This may occur when primary jurisdiction resided with the state and the court believed mistakenly that the inmate was in federal custody for service of the federal sentence on the date of imposition." PS 5160.05, Page 5. As set forth above, Petitioner contacted his federal sentencing court after he learned how the BOP was calculating his federal sentence, and the court expressly denied his request for a concurrent sentence.

9

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano, 307 F.3d at 126. The BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. PS 5880.28, Chapt. 1, Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). See, e.g., Rashid v. Quintana, 372 F.App'x 260, 262 (3d Cir. 2010) (per curiam) ("a federal sentence cannot begin to run earlier than on the date on which it is imposed.") (citing Unites States v. Labeille-Soto, 163 F.3d 93, 98 (2d Cir. 1998), which stated: "We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]" (internal quotations and brackets omitted)).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal and state governments must resolve where and/or in what order the inmate will serve his multiple

10

sentences. As discussed above, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissing the charges, releasing the individual to parole or at the expiration of his sentence. See, e.g., George, 463 F.App'x at 138 n.4

The BOP has incorporated the common law primary custody doctrine into its policies, which provide:

1. If the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

2. If the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently* with any state sentence, the BOP will return physical custody of the inmate to the state, designate the state facility as the initial place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

3. If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

The third scenario is what has occurred in Petitioner's case. He was in the primary custody of the State of Texas on the date his federal sentence was imposed. Because his federal sentence is consecutive to his state parole violator sentence, the BOP has calculated his federal sentence to have commenced under § 3585(a) on December 11, 2009, the date the State of Texas released him on parole to the federal detainer. There is no basis for this Court to disturb the BOP's determination. The policies it applied to Petitioner are a permissible construction of § 3585(a).

It is true that Petitioner initially was erroneously designated to FCI Texarkana. However, the BOP has the authority to correct its errors. See Allen v. Nash, 236 F.App'x 779, 783 (3d Cir. 2007) (per curiam) ("Because the designation to USP-Lewisburg was in error, it did not operate to commence Allen's federal sentence."). After all, one of the purposes of requiring that prisoners first exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to correct its own mistakes. See Woodford v. Ngo, 548 U.S. 81, 89 (2006). In fact, the BOP acknowledges that there will be occasions when an inmate will have been improperly designated to a federal detention center for commencement of his federal sentence when he should have been returned to, or remained in, state custody for the completion of a state sentence that must be served first. The BOP directs that upon discovery of the error, the BOP staff shall "make every effort to return the inmate to state custody," and the USMS will lodge a detainer with state authorities. PS 5160.05, Pages 11-12. When such an error occurs, the BOP directs that the federal sentence should be considered as *not* having commenced since the earlier transfer to federal custody was in error. PS 5160.05, Page 12. In accordance with this policy, as soon as the BOP discovered that the USMS had erred in requesting that Petitioner be designated to a federal correctional institution, it immediately changed Petitioner's designation and began arrangements to return him to the physical custody of the State of Texas.

Petitioner contends that the BOP's application of its policy to him violated the federal common law "continuous service" rule, which provides that "unless interrupted by fault of the prisoner … a prison sentence runs continuously from the date on which the defendant surrenders to begin servicing it." Weekes v. Fleming, 301 F.3d 1175, 1180 (10th Cir. 2002) (citing Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994)). This Court rejects Petitioner's argument. The U.S. Court of Appeals for the Third Circuit has observed that the "continuous service" rule "is only a rule of interpretation … laden with considerations of policy" and "not a constitutional command[.]" Boston v. Attorney Gen. of the United States, 210 F.App'x 190, 193 n.2 (3d Cir. 2006) (per curiam) (quoting Dunne, 14 F.3d at 336). See also Allen, 236 F.App'x at 783; Free v. Miles, 333 F.3d 550, 555 (5th Cir. 2003) (per curiam) ("The rule against piecemeal incarceration precludes the government from artificially extending the expiration date of a prison sentence; the rule does not, however, justify or mandate that a prisoner receive a 'get out of jail early' card any time that such a minuet occurs, even when the prisoner is not at fault."). The Third Circuit Court further explained that "courts have not followed [the continuous service] rule without exception.… [T]he danger that the rule protects against is that the government might abuse its coercive power to imprison a person and **artificially extend the duration of the sentence by continuously releasing and then reincarcerating the prisoner**." Id. at 193 (emphasis added) (citing Free, 333 F.3d at 554, in which the court refused to apply the continuous service rule when the inmate's total time of incarceration in both federal and state prisons had not been increased as a result of his mistakenly serving the first six months of his federal sentence prior to completing the service of his state sentence); see also Dunne, 14 F.3d at 336; Cox v. United States, 551 F.2d 1096, 1099 (7th Cir. 1977).

In Vega v. United States, 493 F.3d 310 (3d Cir. 2007), the Third Circuit Court held in a precedential opinion that the "continuous service" rule would apply if negligence on the part of the BOP resulted in an inmate **being erroneously released from incarceration to his liberty** and then

13

reimprisoned upon the discovery of the government's error. 493 F.3d at 314-23. But it has expressly declined to apply the "continuous service" rule in two unpublished decisions in which, as is the case here, an inmate simply was reclassified from a federal detention facility to a state detention facility for the purpose of having him serve a state sentence before serving a consecutive federal sentence. Boston, 210 F.App'x at 193 ("Where a prisoner's total time of incarceration in both federal and state prison will not be increased as a result of his mistakenly serving a portion of the federal sentence before completing his state sentence, the central concern of the rule is not invoked."); Allen, 236 F.App'x at 787 (citing Dunne, 14 F.3d at 337 for the proposition that the continuous service rule "has no applicability when a prisoner is simply reclassified for the purposed of having him serve a state sentence before serving a consecutive federal sentence[.]"); see also Free, 333 F.3d at 555 ("Free is serving the correct total of time of his *consecutive* state and federal sentences. That he will have done so in two shifts between sovereigns rather than one is of no moment.") (emphasis in original).

To the extent that the common law "continuous service" rule has any ongoing vitality in light of the current federal sentencing statutes and BOP policies, this Court concludes that it does not apply to this case because the BOP has not "artificially extended the duration" of the 138-month term of imprisonment that Petitioner's federal sentencing court imposed. Nor, for that matter, did the BOP's actions extend the duration of Petitioner's state parole violator sentence, since the State of Texas credited against his state parole violator sentence all of the time he spent in either state or federal custody from September 16, 2004, through December 11, 2009.

### 3. Calculation of pre-commencement credit under § 3585(b)

Section 3585(b) governs the amount of credit an inmate is entitled to receive for time served in official detention prior to the commencement of his federal sentence. It provides:

14

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> **That has not been credited against another sentence.**

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). The BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Vega, 493 F.3d at 314.

The BOP has determined that Petitioner is entitled to eight days of pre-commencement credit under § 3585(b). There is no basis for this Court to disturb the BOP's decision that Petitioner may not receive any additional sentencing credit under § 3585(b). The credit he has received accounts for the time he spent in official detention from September 8, 2004, through September 15, 2004, which the State of Texas did not credit against his parole violator sentence. The BOP cannot give Petitioner any additional credit under § 3585(b) for the time he spent in official detention from September 16, 2004, through December 10, 2009 (the day before his federal sentence commenced) because all of that time was credited against his state parole violator sentence. See, e.g., Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

## II.

For the reasons set forth above, the petition for a writ of habeas corpus is denied.[4] An appropriate Order follows.

Dated: May 22, 2014

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

---

[4] Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| NATHAN LEE COOK, | ) | |
|---|---|---|
| Petitioner, | ) | Civil Action No. 12-179 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| WARDEN BOBBY L. MEEKS, | ) | |
| Respondent. | ) | |

# **ORDER**

AND NOW, this 22nd day of May, 2014;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Courts is directed to close this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge